## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-18CR-382 |
| | § | |
| ANTHONY CHUKWUDI NWOSAH, | § | |
| Defendant. | § | |

## PLEA AGREEMENT

The United States of America, by and through Ryan K. Patrick, United States Attorney for the Southern District of Texas, and Julie M. Redlinger, Assistant United States Attorney, and the defendant, Anthony Chukwudi Nwosah ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1.      Defendant agrees to plead guilty to Count One of the Criminal Information. Count One charges Defendant with conspiracy to commit health care fraud, specifically, to execute and attempt to execute a scheme and artifice to defraud the Medicare health care benefit program, and to obtain by means of false and fraudulent pretenses, representations, and promises, money owed by and under the custody and control of Medicare in connection with the delivery of and payment for health care benefits, items, and services in violation of Title 18, United States Code, Section 1349. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

**Punishment Range**

2.      The <u>statutory</u> maximum penalty for each violation of Title 18, United States Code, Section 1349, is imprisonment of not more than 10 years or a fine of not more than $250,000, or both. *See* 18 U.S.C. §§ 1347(a), 1349, 3571(b)(3). Additionally, Defendant may receive a term of supervised release after imprisonment of not more than 3 years and a special assessment of $100 per count. *See* 18 U.S.C. §§ 3559(a)(3), 3583(b)(2), 3013(a)(2)(A). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* 18 U.S.C. § 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

**Mandatory Special Assessment**

3.      Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

**Immigration Consequences**

4.      Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

**Cooperation**

5.      The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in paragraphs 22 - 25 of this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6.     Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to the receipt and payment of kickbacks for the provision of health care benefits, items and services, including transportation and treatment, to Medicare and Medicaid beneficiaries, and beneficiaries of any other type of health insurance program. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

a.  Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

b.  Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

c.  Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

d.  Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

e.  Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

f.  Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

**Waiver of Appeal and Collateral Review**

7.     Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. Defendant's knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence includes waiving the right to raise on appeal or on collateral review any argument that (1) the statute to which the defendant is pleading guilty is unconstitutional and (2) the admitted conduct does not fall within the scope of the statute. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8.     In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not

make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9.      Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

10.     The United States agrees to each of the following:

a. If Defendant pleads guilty to Count One of the Criminal Information and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will not bring any other charges related to the crimes charged in the Criminal Information that occurred between February 21, 2012 and June 5, 2015;

b. At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a two (2) level downward adjustment pursuant to Section 3E1.1(a) of the United States Sentencing Guidelines, should Defendant accept responsibility as contemplated by the Sentencing Guidelines.

c. If the Court determines that Defendant qualifies for an adjustment under Section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of Section 3E1.1(a) is 16 or greater, the United States will move under Section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

**United States' Non-Waiver of Appeal**

11.     The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

        a.   To bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

        b.   To set forth or dispute sentencing factors or facts material to sentencing;

        c.   To seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

        d.   To file a pleading relating to these issues, in accordance with Section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

        e.   To appeal the sentence imposed or the manner in which it was determined.

**Sentence Determination**

12.     Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that

the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

**Rights at Trial**

13.     Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

> a. If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

> b. At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

> c. At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

8

**Factual Basis for Guilty Plea**

14.     Defendant is pleading guilty because he is in fact guilty of the charges contained in Count One of the Criminal Information. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

a.     Nwosah became the owner of Toneiann EMS doing business as Med-Hope EMS around February 26, 2009. Toneiann EMS submitted ambulance claims to Medicare for payment. On or about November 15, 2010, Toneiann EMS was placed on Medicare prepay review status. The last Toneiann EMS ambulance claims Nwosah filed were in August of 2011.

b.     On or about February 21, 2012, Nwosah became the owner and operator of Rosenberg EMS. Nwosah ran Rosenberg EMS from his home in Sugarland, Texas, and used the same PO Box mailing address for Rosenberg EMS that he had used for Toneiann EMS.

c.     On or about January 22, 2013, Nwosah applied to enroll Rosenberg EMS in the Medicare program. Nwosah signed Section 15 of the Medicare application for Rosenberg EMS on January 22, 2013 and again on February 8, 2013. Section 15 of the Medicare application contained an agreement not to knowingly submit false or fraudulent claims to Medicare, or claims with deliberate ignorance or reckless disregard of their truth or falsity.

d.     On or about February 20, 2013, Medicare enrolled Rosenberg EMS as a health care service provider and sent Nwosah a letter that provided information about the Medicare program, including billing, fee schedules, and policies and procedures. The Medicare program published and made available benefit payment information to all health care service providers. The Medicare program only intended to pay for ambulance transportation services that were actually provided

and medically necessary. Medicare did not intend to pay for ambulance services provided by non-ambulance vehicles, such as vans, taxis, and private automobiles, or for the transportation of beneficiaries who at the time of service, could be safely transported by any other means. Medicare required at least two staff on each ambulance transport including at least one licensed emergency medical technician ("EMT"). Medicare also required certain safety equipment on ambulance transports including stretchers, medical supplies, and oxygen.

e.    After receiving the Rosenberg EMS Medicare provider number, Nwosah submitted claims for ambulance transportation services that were not provided and not medically necessary. For example, Nwosah submitted $2,249,314.00 in ambulance transport claims for beneficiaries Robin A., Debra E., Patricia F., Bobby F., Gaylon J., Pamela K., Shirley M., and Hattie W., who were transported by a van and not an ambulance to routine psychotherapy appointments. Additionally, Nwosah submitted $375,400 in ambulance transport claims for Ronald B., who routinely used the Houston Metro service to get to medical appointments and did not require Medicare covered ambulance services.

f.    To give Rosenberg EMS the appearance of a legitimate business, Nwosah instructed employee J.W., a licensed EMT to create fake ambulance run sheets to document ambulance services that were not provided. Nwosah gave J.W. a sample of patient information to copy on the fake run sheets. The run sheets created by J.W. included fake vital signs, fake patient narratives, and fake transport miles. Nwosah also created over 2,000 fake run sheets with the name of licensed EMT I.A. who never worked for Rosenberg EMS. Notably none of the Rosenberg EMS run sheets contained a beneficiary signature confirming receipt of medically necessary ambulance services.

g.      To further give Rosenberg EMS the appearance of legitimacy, Nwosah obtained physician certification statements of medical necessity from Dr. J.R. who was not the primary care physician of many of the beneficiaries, including Debra E and Pamela K. who had not heard or seen Dr. J.R. and who did not qualify for Medicare covered ambulance services.

h.      Around January 2015, the United States Department of Health and Human Services, Office of Inspector General ("HHS-OIG") notified Nwosah that the Rosenberg EMS ambulance claims were under investigation. In response to an HHS-OIG investigation request, and through counsel, Nwosah, submitted thousands of false and fraudulent ambulance run sheets, including fake run sheets created by J.W. and fake run sheets with the name of I.A. who did not work for Rosenberg EMS.

i.      Between February 21, 2012 and June 5, 2015, Rosenberg EMS submitted approximately $3,017,394.00 in false and fraudulent Medicare claims for ambulance services that were not provided and not medically necessary. Nwosah received approximately $1,094,260.00 as payment for those false and fraudulent claims. Nwosah used at least $66,870.00 of the Medicare payments to pay the mortgage on his home in Sugarland, Texas, legally described as Riverpark Sec 10, Block 1, Lot 15.

**Breach of Plea Agreement**

15.     If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United

States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

16.     This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

17.     Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) <u>within 14 days</u> of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

18.     Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents

necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

19.     Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution

20.     Defendant agrees to pay full restitution to the victim regardless of the counts of conviction. Defendant stipulates and agrees that as a result of his criminal conduct, the Medicare program that is administered by the HHS-OIG incurred a monetary loss of at least $1,094,260.00. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

## Forfeiture

21.     Defendant stipulates and agrees that the property listed in the Criminal Information's Notice of Forfeiture is subject to forfeiture, and Defendant agrees to the forfeiture of that property.

22.     Defendant stipulates and agrees that Defendant obtained at least $1,094,260.00 from the criminal offenses and that the factual basis for his guilty plea supports the forfeiture of at least $1,094,260.00. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, Section 853(p), exists. Defendant agrees to forfeit any of

13

Defendant's property in substitution, up to a total forfeiture of $1,094,260.00. Defendant agrees to the imposition of a personal money judgment in that amount.

23.     Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

24.     Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

25.     Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

## Fines

26.     Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

## Complete Agreement

27.     This written plea agreement, consisting of 16 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant

14

acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

28.     Any modification of this plea agreement must be in writing and signed by all parties.

Filed at _Houston_ , Texas, on _August 20_ , 2018.

_____
Defendant

Subscribed and sworn to before me on _August 20_ , 2018.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Ryan K. Patrick
United States Attorney

By: _____
Julie M. Redlinger
Assistant United States Attorney
Southern District of Texas
SDTX: 873627
SBN: 24049160
Telephone: 713-567-9000

_____
David Nachtigall
Attorney for Defendant

15

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-18CR-382 |
| | § | |
| ANTHONY CHUKWUDI NWOSAH, | § | |
| Defendant. | § | |

### PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Criminal Information. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines, which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

| | |
|---|---|
| _____ | 8/20/18 |
| Attorney for Defendant | Date |

I have consulted with my attorney and fully understand all my rights with respect to the Criminal Information pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual, which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

| | |
|---|---|
| _____ | 08/20/2018 |
| Defendant | Date |

16